CHARLES M. HAMLIN *vs.* N. H. BRAGG & SONS.

CHARLES M. HAMLIN, JR., PRO AMI *vs.* N. H. BRAGG & SONS.

Penobscot.      Opinion November 4, 1929.

*George E. Thompson,*
*Abraham M. Rudman,* for plaintiffs.
*Fellows & Fellows,* for defendant.

SITTING: WILSON, C. J., DUNN, DEASY, BARNES, PATTANGALL, JJ.

WILSON, C. J.    Actions by a father in his own behalf and as next friend of an infant child for personal injuries to the child resulting from the alleged negligence of a servant of the defendant.

After the evidence of the plaintiffs was in, the defendant's counsel moved for a directed verdict, which the presiding Justice granted, but with the following stipulation: "that if it shall be found that these actions upon this evidence can be maintained, the liability of the defendant is determined by that finding and the cases will come back to be heard upon the question of damages."

To this ruling the plaintiffs excepted and the case is before this court upon the plaintiffs' bill of exceptions.

The case as submitted presents unusual questions by reason of the form of the stipulation. As the cases were tried, evidence was admitted against defendant's objection and to the admission of which exception was taken but not, of course, perfected by reason of the verdicts being directed in their favor. The evidence objected to was in the form of a statement by the servant of the defendant as to how the accident occurred made some time after the accident.

It was the only evidence in the case as to what actually transpired at the time of the accident. Without it the case is barren of affirmative proof of any negligence on the part of the defendant.

With the evidence in the case contained in the statement of the driver of the truck to a relative of the child after the child had

been taken to the hospital and the driver was, as an act of courtesy, conveying the relative back to her home, there could be no question of their being sufficient evidence to submit to the jury.

It is urged by the defendant's counsel, however, that on an exception to a ruling to direct a verdict this court must base its conclusion on the admissible testimony, and cites *Wellington* v. *Corinna*, 104 Me., 255, and *Ford* v. *Dilley*, 174 Iowa, 243, 248 (L. R. A., 1917-B, 1245).

In the first case the question of the admissibility of the evidence was before this court on a bill of exceptions and in the latter case under the Iowa statutes cases come before the appellate court on appeal and not by bill of exceptions under which procedure in that state any question raised below may be considered on appeal.

If the case were here without the stipulation and the exceptions were sustained the case would go back for a new trial on the merits and the defendant could protect itself in case the verdict was against it by perfecting a bill of exceptions to the admission of this evidence on a new trial; but with the stipulation incorporated in the bill of exceptions and assented to by the defendant's counsel to the effect that if it shall be found that these actions upon the evidence can be maintained, the liability of the defendant is thereby determined. It is not an unusual practice to submit a case to this court after a directed verdict on such a stipulation where there is no question as to the admissibility of any of the evidence. *Rosen* v. *Insurance Co.*, 106 Me., 229 ; *Johnson* v. *N. Y. N. H. & H. R. R. Co.*, 111 Me., 263.

The question at *nisi prius* was whether there was sufficient evidence admitted by the presiding Justice to go to the jury on the disputed issues to sustain a verdict for the plaintiff. The issue before this court on a bill of exceptions to a ruling directing a verdict for the defendant with a stipulation that, if a verdict can be maintained on the evidence, without expressly limiting it to the admissible evidence, is whether upon the case as it stood at the close of the plaintiffs' testimony, with the evidence objected to in the case, it can be maintained.

We do not think this stipulation can be construed as submitting the case to this court as on report. Otherwise the bill of exceptions is without purpose. It must be construed as having the same

effect as the stipulations in the cases above referred to.

As the court said in *Rosen* v. *Insurance Co.*, supra, as the case is presented "the test is whether a verdict for the plaintiff could be sustained by this court on the evidence," and as in *Johnson* v. *N. Y. N. H. & H. R. R.*, supra, "We are not called upon to express our own judgment on the probative force of the testimony whatever our own conclusion might have been. If there was evidence which the jury were warranted in believing and upon the basis of which honest and fair minded men might reasonably have decided in favor of the plaintiff, then the exceptions must be sustained."

According to the testimony, the injured child was not quite five years of age. Just prior to the accident he had been playing on the lawn at the home of his grandparents, which fronted on the main street in the town of Orono. Between the lawn and the travelled part of the street there was a sidewalk and ditch and then the car track of an electric road. Across the ditch from the sidewalk was a plank platform to permit passengers to enter and leave the electric cars at that point.

Just before the accident, the mother of the child, who had been seated on the front piazza of the home at which they were visiting for the purpose of watching the child at play, had gone into the house for her sewing and after coming out had just stooped to pick it up when she heard the "terrible screech" of the brakes of the truck as the driver had put them on to avoid the accident.

Apparently while she was in the house the child had gone onto the platform and was either seated or standing and as the truck approached had started to cross the street, so far as the evidence shows unconscious of the approaching truck.

According to the statement of the driver made to a relative after the accident, which was admitted over the defendant's objection, the driver, as he was coming along the street nearly one thousand feet away, saw the child standing on the platform leading from the sidewalk to the car tracks. He was then driving thirty-five miles an hour. He admitted he was in a hurry to reach his home for his supper. He does not say he slowed down as he approached the point of the accident; and though he saw the child on the platform, he gave no warning signal of his approach for fear, as he stated, of startling the child, though it is not clear why, if he startled him,

he expected that he might start to cross the street rather than toward his mother, the source of refuge of every child in case of alarm.

Just before he reached the point of the accident, the child did start across the street; and though the driver turned to the left and put on his brakes till they "screeched," the child was run into or over and severely injured.

While a driver of a motor vehicle may not be held, even without a warning signal of his approach, to anticipate that an adult will attempt to cross a street without exercising some degree of care in looking for possible approaching traffic, unless in a congested part of a city at points provided for pedestrians to cross, yet he may not be held free of negligence if seeing a child of tender years standing on a platform or walk leading from the sidewalk to the electric car track and to the travelled part of the street, and without any warning signal of his approach, fails to keep his motor vehicle under such control that he can not readily stop it in case such child attempts to cross the street. The driver in this case did not state that the child suddenly darted out from the platform, but that when he observed him cross the tracks to the roadway, it was too late for him to stop or turn out sufficiently to avoid him.

Upon such evidence a jury may well have found that the driver was guilty of negligence.

It is urged that the time which elapsed between the accident and his stopping and picking up the child and with the mother starting for the hospital indicates that the driver was travelling slowly at the time of the accident, but his admission that one thousand feet back he was travelling at thirty-five miles per hour and was hurrying home to supper and the application of his brakes to the extent that the protesting brake drums were heard one hundred and fifty feet away and in the house, would warrant a jury in finding that he did not have his car under proper control under the circumstances.

Upon the issue of contributory negligence, either on the part of the child or of imputed negligence on the part of its parents under the circumstances disclosed by the testimony in the case, the court can not say as a matter of law that a child of that age is not capable of exercising some degree of care or that there was or was

not imputed negligence on the part of its parents in permitting a child of his age to play on a front lawn of considerable size, though adjoining a much travelled thoroughfare, without constant watching. It was a question for the jury to determine.

The child, of course, did not testify, and there is no evidence in the case as to his mental development or familiarity with the dangers of street traffic. Even if we can attribute to him the judgment of the ordinary child of five years of age, it can not be said as a matter of law that a child of that age failed to exercise the care the law requires of him in attempting to cross a street, no warning having been given him of an approaching motor vehicle. It has been held that, as a matter of law, even an adult is not obliged to stop and look before crossing a street. It is a question for the jury to say under the circumstances whether crossing a street without looking for approaching traffic is negligence. *Shaw* v. *Bolton*, 122 Me., 232.

Neither can it be said as a matter of law that a mother is guilty of negligence for not keeping constant watch over the play of a five year old child on a spacious lawn. *Grant* v. *Bangor Railway & Elec. Co.*, 109 Me., 133, 137.

To leave him unwatched during a brief period while she was going upstairs for some sewing and stooping to pick up material she had laid down on the piazza floor can not be held as a matter of law to be negligence which would be imputed to a five year old child, who while she had been watching him had disclosed no intention of going into the street. Her attention had not been attracted to the approaching motor vehicle by any warning signal. The test is whether she exercised that degree of care which an ordinarily prudent person would have exercised under like circumstances. *Coughlin pro ami* v. *Bradbury*, 109 Me., 571, 573.

The alleged negligence on the part of the child and of the mother were jury questions, and it can not be said that a jury of twelve reasonable men might not have found for the plaintiffs upon the evidence admitted, or that, if they so found, their verdict was clearly wrong.

The exceptions must be sustained, and in accordance with the stipulation, the cases remanded for the assessment of damages.

*So ordered.*